**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.**

**HARBOR INSURANCE COMPANY and Allstate Insurance Company, Plaintiffs,**

v.

**CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.**

Nos. 85 C 7080, 85 C 7081.

United States District Court, N.D. Illinois, E.D.

June 17, 1986.

James Hiering, Dennis Waldon, Keck, Mahin & Cate, Chicago, Ill., for plaintiffs.

Lowell Sachnoff, Dean Dickie, Barry Rosen, Carolyn Rosenberg-Safer, Sachnoff, Weaver & Rubenstein, Chicago, Ill., for FDIC.

Roger Barrett, Frank Auwarter, Robert Kriss, Mayer, Brown & Platt, Chicago, Ill., for Continental Illinois Corp.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Harbor Insurance Company ("Harbor"), Allstate Insurance Company ("Allstate") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") have sued Continental Illinois Corporation ("CIC"), its subsidiary Continental Illinois National Bank and Trust Company of Chi-

cago ("Bank")[1] and a host of other defendants, seeking to avoid liability under the directors' and officers' ("D & O") policies plaintiffs had issued to CIC.[2] Harbor-Allstate and National Union seek leave to add a new Count X to each Complaint, joining as additional defendants the five insurance companies (the "Blanket Bond Carriers") that issued bankers blanket bonds (the "Bonds") to Bank in an aggregate amount of $100 million.

Any such effort to add additional parties defendant must look to Fed.R.Civ.P. ("Rule") 20(a):

> All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Rule 20(a) thus requires, as a condition of joinder, that Harbor-Allstate and National Union have a "right to relief" against the Blanket Bond Carriers. But they do not in any normal sense of that term: What they really want instead is to force one or more of the existing defendants to assert *their* "right to relief" against the Blanket Bond Carriers.

For obvious reasons Harbor-Allstate and National Union are reluctant to define the issue in those terms, for that would expose the emptiness of their own "right to relief" position. Though this opinion might well end with the simple contrast between Rule 20(a)'s requirements and what Harbor-All-

state and National Union ask, this Court will go on to elaborate a bit.

There is a basic difference in coverage between plaintiffs' D & O policies and the Bonds:

1. Because CIC's coverage under the D & O policies is derivative—covering reimbursement for indemnification it has extended to directors and officers—such coverage does not extend to an individual's conduct found (for example) to have been fraudulent and dishonest.

2. Because the Bonds provide direct rather than derivative coverage, aimed precisely at protecting Bank against depredations by its employees, such coverage does extend (for example) to fraudulent and dishonest conduct by such employees.

Harbor-Allstate and National Union urge that difference as a ground for adding the Blanket Bond Carriers "so that all of the controversies relating to the liability for Continental Bank's losses, if any, on the part of the bank's insurers and blanket bond carriers can be resolved at one time and in one forum" (Harbor-Allstate Motion 3–4).[3]

That is a real non sequitur. Were the two kinds of policies mutually exclusive, so that recovery under one type could be obtained by Continental only at the expense of sacrificing recovery under the other, that could well justify forcing the Blanket Bond Carriers into these actions and forcing Bank to resolve its claims against them here.[4] See, e.g., *Lumbermens Mutual Casualty Co. v. Borden Co.*, 241 F.Supp. 683, 695 (S.D.N.Y.1965); *Diamond Shamrock Corp. v. Lumbermens Casualty Co.*,

---

**1.** CIC and Bank are collectively called "Continental."

**2.** This opinion is the third to treat with the motions this Court inherited on the recent reassignment of these actions to its calendar.

**3.** These cases prove once again how the approach to legal questions, like so much in life, tends to be a matter of whose ox is being gored. Harbor-Allstate and National Union have vigorously opposed the efforts of the excess D & O carriers to shoehorn themselves into these actions via intervention (a subject addressed by

this Court in another opinion a few days ago). In doing so, plaintiffs have argued (sensibly) it would be a mistake to proliferate the already-complex issues in these actions and add to the roomful of lawyers who regularly appear at every court date. Yet they blithely argue here for the addition of five more parties and—just as importantly—for the injection of more new issues.

**4.** This Court need not, and therefore does not, decide that question.

416 F.2d 707 (7th Cir.1969); *United Services Automobile Association v. Royal-Globe Insurance Co.*, 511 F.2d 1094 (10th Cir. 1975) (all cases invoked here by Harbor-Allstate and National Union).

But the analogy of those cases to these cases is a false one. What Harbor-Allstate and National Union prefer to ignore is that Continental could very likely recover under *both* the D & O policies and the Bonds.[5] Bank's proof of loss under the Bonds arises out of at least $246 million in losses claimed to have stemmed from fraud on the part of one of its former officers, Vice President John Lytle ("Lytle").[6] At the same time, recovery under the D & O policies (by FDIC as Bank's assignee) can take place even if Lytle were held to have been guilty of fraudulent conduct, because—as Harbor, Allstate and National Union have themselves demonstrated by joining Bank's directors among the original defendants in these actions—liability may be imposed on defendants in the underlying derivative and class actions for conduct other than fraud and dishonesty. Both the fraud and (for example) negligent failure to protect against such fraud may be proximate causes of Bank's huge losses. Hence, unlike the cases Harbor-Allstate and National Union rely on, resolution of their dispute with Continental will not automatically resolve Continental's claims against the Blanket Bond Carriers.

In fact the underlying lawsuits do charge a number of the individual defendants with a negligent failure to supervise—a claim that, if upheld and if required to be indemnified against by Continental, would entitle Continental to recover under the D & O policies. Again, Harbor-Allstate and National Union gloss over a critical fact inherent in the derivative nature of D & O coverage: Loss by one officer of the right to D & O coverage because of fraud or dishonesty (and hence CIC's loss of its derivative coverage for any reimbursement of that officer) need not disqualify other officers from such coverage (hence preserving CIC's right to be made whole by Harbor-Allstate and National Union for the reimbursement of such other officers). Primary D & O coverage is individual and not collective, and by definition CIC's right-to-reimbursement coverage is also determined on a one-by-one basis.[7]

Nor does the potential of recovery under both types of policies pose the specter of double recovery (another makeweight reason advanced by Harbor-Allstate and National Union). Bank's and FDIC's claimed losses are far in excess of the $200 million aggregate policy limits under both the D & O policies and the Bonds.[8]

---

**5.** More accurately, any recovery under the Bonds would be that of FDIC, which took an assignment of all rights under the Bonds as part of its August 23, 1984 Assistance Agreement with Continental.

**6.** By sheer coincidence, the criminal indictment of Lytle and two codefendants arising out of the claimed fraud on Bank (84 CR 726) has just been reassigned to this Court's calendar as part of the random reassignment of criminal cases from the calendar of Honorable John Grady, who is about to become Chief Judge of this District Court.

**7.** In short, the right to recovery by Continental (or by FDIC as Continental's assignee) *by reason of the conduct of a specific officer* may be mutually exclusive as between the two classes of policies. Recovery under one type of policy may negate recovery under the other *as to that officer.* But the proliferation of the claims and of the individual defendants involved means recovery *under the policies* is not mutually exclusive. That is the vital distinguishing factor

between these cases and *Eglin National Bank v. Home Indemnity Co.,* 583 F.2d 1281 (5th Cir. 1978), where a single bank employee was involved and the bank's recovery would by definition be under the D & O policy or the blanket bond, but not both.

**8.** FDIC has acknowledged it is not entitled to double recovery, an eventuality that can be prevented by the courts having jurisdiction in either action. It will not do for Harbor-Allstate and National Union to characterize FDIC's efforts as "avaricious over-reaching" (Pl.R.Mem. 10) or as "illegal" (*id.*). Continental paid premiums for two kinds of insurance protection. If the conditions for recovery under the D & O policies have in fact been satisfied (a question this opinion does not reach), the "avaricious over-reaching" would be on the part of the insurer plaintiffs in these cases who, having cheerfully collected the premiums, do not want to pay for the losses they have insured against.

To return to the point of origin, Harbor-Allstate and National Union must ground their effort to enlarge this already sprawling dispute in Rule 20(a). But they simply do not fit that Rule's language. And the engrafted case-law expansion of the Rule to embrace the mutually-exclusive-insurer pattern does not fit the present situation either.

What the present motions boil down to is the desire of Harbor-Allstate and National Union to pressure the Blanket Bond Carriers to sit down at the table for settlement purposes. That desire is not a surrogate for the requirements of Rule 20(a). Harbor-Allstate and National Union have no "right to relief" against the Blanket Bond Carriers. Their motions are denied.