**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 31 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

FIRST MARINE INSURANCE COMPANY,

    Plaintiff-Appellee,

v.

CHARLOTTE ANN GIBBS,

    Defendant-Appellant.

No. 98-6117
(W.D. Okla.)
(D.Ct. No. CIV-96-1868-T)

_____

**ORDER AND JUDGMENT**[*]

Before **ANDERSON, BRORBY**, and **MURPHY**, Circuit Judges.

    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

    Appellant Charlotte Ann Gibbs brings this appeal challenging the district

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

court's entry of summary judgment in favor of Appellee First Marine Insurance Company (First Marine). Ms. Gibbs contends the district court erred in finding she resided in the household of Mr. James Bibbs, the insured, and therefore is subject to exclusion from coverage under Mr. Bibbs' policy with First Marine. We exercise jurisdiction under 18 U.S.C. § 1291 and affirm.

BACKGROUND

Ms. Gibbs was injured in an accident on April 17, 1996, while riding as a passenger in a boat owned and operated by Mr. Bibbs. Mr. Bibbs maintained an insurance policy for the boat with First Marine, and the policy was in effect at the time of the accident. After the accident Ms. Gibbs made a claim against First Marine for bodily injuries she suffered. However, First Marine refused to pay her claim and instead sued for a declaratory judgment in federal court arguing Mr. Bibbs' policy did not cover Ms. Gibbs because she resided in his household. First Marine cited a specific clause in the policy expressly excluding coverage for bodily injury to "any other regular resident of the insured's household."

Meanwhile, collateral to the federal court proceedings, Ms. Gibbs sued Mr. Bibbs personally for negligence in the District Court of Cleveland County, Oklahoma. First Marine agreed to defend Mr. Bibbs in the state court lawsuit,

-2-

promising to indemnify him under the terms and conditions of the policy but noting also that a question remained concerning coverage under the policy for Ms. Gibbs' injuries. Before reaching the merits of the state case, the parties decided to settle. They mutually agreed to dismiss Ms. Gibbs' suit on the condition that if First Marine did not prevail in its declaratory judgment action against her in federal court, it would pay as if the state court had entered judgment in Ms. Gibbs' favor.

Following resolution of the state court suit, the declaratory judgment action in federal court continued with the parties filing cross-motions for summary judgment. The district court granted First Marine's motion determining Ms. Gibbs and Mr. Bibbs resided in the same household and, therefore, the policy excluded Ms. Gibbs from coverage. The district court based its decision on the fact that although not romantically involved, Ms. Gibbs and Mr. Bibbs had lived together and slept in the same house in Oklahoma City for approximately five years before the accident occurred. Mr. Bibbs claimed his formal address was at a separate house he owned in Midwest City, Oklahoma, where he continued to receive mail and maintain electrical and telephone service. Nevertheless, because Mr. Bibbs never inhabited the house and described it in his own words as "unlivable," the court found that Mr. Bibbs and Ms. Gibbs resided together as

members of the same household in Oklahoma City at the time the accident occurred.

Ms. Gibbs now appeals claiming the district court erred in holding: (1) First Marine is not estopped from denying coverage for her injuries because it defended Mr. Bibbs in the state action without reservation of its rights; and (2) Ms. Gibbs is excluded from coverage because she and Mr. Bibbs, the insured, resided at the same household. In addition, Ms. Gibbs argues the evidence regarding the question of whether she and Mr. Bibbs qualified as residents of the same household at the time of the accident is conflicting and creates a question of fact inappropriate for resolution through summary judgment.

DISCUSSION

We review the district court's entry of summary judgment *de novo* employing the same legal principles as the district court and construing the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *See Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate if the record shows "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). An issue of material fact is genuine only if the nonmovant presents facts sufficient to show a reasonable jury could find in favor of the nonmovant. *Liberty Lobby,* 477 U.S. at 248. If our inquiry reveals no genuine issue of material fact in dispute, then we review the case to determine if the district court correctly applied the substantive law. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996). In this diversity action, we apply the law of Oklahoma. *See Braun v. Annesley*, 936 F.2d 1105 (10th Cir. 1991).

As an initial matter, we must respond to Ms. Gibbs' argument that First Marine is estopped to deny coverage because it informed Mr. Bibbs it planned to defend and indemnify him in the state action. As a general rule, only the insured possesses standing to argue estoppel, and third parties may not raise the issue unless they stand in the same position of potential prejudice as the insured. *See Transamerica Ins. Co. v. International Broad. Corp.*, 94 F.3d 1204, 1208 (8th Cir. 1996). However, it is unnecessary for us to address the issue of Ms. Gibbs' standing to raise an estoppel claim because the argument fails whether asserted by the insured or Ms. Gibbs as a third party. An insurer is not estopped from denying coverage when it defends an insured if it also notifies him it is reserving its right to later contest coverage. *Cf. Braun*, 936 F.2d at 1110-11. The record

clearly shows First Marine gave adequate notice to Mr. Bibbs of its dispute regarding coverage in its letter to him dated August 6, 1996. In the letter, First Marine informed Mr. Bibbs it had filed the declaratory judgment action challenging its obligation to pay the claim for bodily injury made by Ms. Gibbs, and described in some detail the legal process it was pursuing against her. First Marine also expressly stated it felt "there is a question as to whether or not there is liability coverage under the policy for damages sustained by Ms. Gibbs while a passenger in [Mr. Bibbs'] boat." In addition to the letter, Mr. Bibbs' own deposition testimony reflects the fact that he knew as a result of his dealings and correspondence with First Marine that it questioned whether coverage extended to Ms. Gibbs. Upon these facts, we agree with the district court that the statements in the letter, combined with Mr. Bibbs own testimony showing his actual knowledge of First Marine's coverage dispute, sufficiently articulated a reservation of rights and preserved First Marine's right to deny coverage.

We must now address the substance of this appeal and determine whether the district court appropriately found Ms. Gibbs qualified as a "regular resident of [Mr. Bibbs'] household" at the time of the accident and therefore properly excluded from coverage under his policy with First Marine. The scope and meaning of "household" and other terms within the context of the insurance

policy, ordinarily depend on the precise language of the policy and the particular circumstances present.    *See* Okla. Stat. tit. 36, § 3621 ("Every insurance contract shall be construed according to the entirety of its terms").  However, in this case the policy itself does not define "household" or give any guidance for interpreting what persons fall within the scope of the term.  Consequently, we turn our attention to general definitions from accepted authorities to determine the plain, ordinary meaning of the word "household."

Under Oklahoma law, the precise meaning of "household" is difficult to ascertain.  In *Indemnity Ins. Co. of North America v. Sanders*, 36 P.2d 271 (Okla. 1934) the Oklahoma Supreme Court cited several definitions of "household," including one from *Arthur v. Morgan*, 112 U.S. 495, 499 (1884), where the Supreme Court stated that "[p]ersons who dwell together as a family constitute a 'household,'" and a definition from Webster's New International Dictionary stating a household consists of "[t]hose who dwell under the same roof and compose a family."  *Sanders*, 36 P.2d at 273.  *See also Henderson v. Eaves*, 516 P.2d 270, 274 (Okla. 1973).  Building on this foundation, in *Hardesty v. State Farm Mut. Auto. Ins. Co.*, 361 F.2d 176, 177 (10th Cir. 1966), we validated as a proper definition of a household under Oklahoma law, a jury instruction stating that "for a place to be the household of one there must be therein a dwelling

-7-

together as a family and said household must be supported by and under a single head or management. In other words, persons who dwell together as a family constitute a household." All these traditional definitions of a household consistently accentuate familial relationships as the common thread. However, it is evident from more recent Oklahoma case law that a familial relationship may no longer be required. In *Flitton v. Equity Fire & Cas. Co.*, 824 P.2d 1132, 1134 (Okla. 1992), the Oklahoma Supreme Court specifically states the "[c]lassification of those individuals coming within the definition of a 'family' or 'household' is not necessarily dependent upon the presence of a connection by affinity or consanguinity." We believe *Flitton* reflects the Oklahoma's attempt to broaden the traditional scope of what constitutes a "household" in order to adjust to modern social trends and encompass other types of domestic relationships like cohabiting unmarried couples who, while probably comprising a "household," might otherwise escape inclusion under the conventional definition of the term and undermine the exclusion's purpose to avoid the potential for unfair collusion between the insured and the injured "household" member. With these principles in mind, we distill the general definition of "household" under current Oklahoma law for the purposes of the insurance policy at issue to constitute a home or residential establishment consisting of people dwelling together under the same roof, regardless of kinship by blood or marriage.

Applying this definition to our *de novo* review of the facts presented, we find Ms. Gibbs qualifies as a "regular resident" of Mr. Bibbs' "household." Ms. Gibbs argues the exclusion clause in the insurance policy by its own terms cannot apply to her because she is the head of her own household in a home she leases. On this basis, Ms. Gibbs contends she is not and cannot be a "regular resident of [Mr. Bibbs'] household." However, the basic flaw in Ms. Gibbs' reasoning is that it equates "the insured's household" with ownership of a place or location rather than as a term connoting a domestic status or relationship of persons. In other words, "household" is not synonymous with "house." Simply because Ms. Gibbs leases the house where she and Mr. Bibbs reside does not mean she cannot be a member or resident of Mr. Bibbs' household if they reside together under the type of living arrangement or status enumerated in Oklahoma's definition of "household." The fact that she owns or leases the premises in her name alone is immaterial. As the record indicates, they had lived together and slept in the same house for several years; Mr. Bibbs carried on his business from the house he shared with Ms. Gibbs; and even though Mr. Bibbs owned another house, he never actually resided there. Regardless of whether they were unrelated by blood or marriage or that their relationship was not romantic, the fact remains they were very good friends who enjoyed a close, personal relationship. Moreover, all these facts strongly indicate the potential for collusion between Ms. Gibbs and

Mr. Bibbs, which is precisely the type of unfair conduct the exclusion clause of the policy is intended to alleviate. Mr. Bibbs testified in his deposition that he willingly and freely gave Ms. Gibbs and her attorney the letter addressed directly to him from First Marine dated August 6, 1996 that discussed the status and certain strategic details of First Marine's actions with regard to Mr. Bibbs' policy. Sharing of this potentially confidential information hardly supports Ms. Gibbs' claim of an independent, detached living arrangement between them. Accordingly, we find these facts sufficient to bring Ms. Gibbs and Mr. Bibbs within Oklahoma's definition of a "household" and support the district court's ruling in this matter.

Finally, we are unpersuaded by Ms. Gibbs' argument that the district court must leave this question for a jury to decide. The facts relevant to the court's decision are undisputed and not susceptible to competing interpretations or inferences. The district court appropriately found from the evidence presented that Ms. Gibbs and Mr. Bibbs lived together for a substantial amount of time under the same roof and shared, at a minimum, some sort of personal, informal relationship. An examination of the record before us reveals no other evidence sufficient to disturb this conclusion and create a genuine issue of material fact with regard to whether Ms. Gibbs and Mr. Bibbs qualified as residents of the

same household.

CONCLUSION

Based on the facts in the record before us on appeal, we find Ms. Gibbs was a regular resident of Mr. Bibbs' household at the time of the accident. Accordingly, we affirm the decision of the district court.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge